**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| STAR DEHAARTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 26-cv-132 (GMH) |
| | ) | |
| DISTRICT OF COLUMBIA | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Star Dehaarte, who proceeds *pro se*, is a former employee of the District of Columbia Public Schools ("DCPS").  She has filed suit against Defendant District of Columbia, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; violations of the Rehabilitation Act, 29 U.S.C. § 791 *et seq.*; violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*; and the common law torts of negligent supervision and intentional infliction of emotional distress.  The District of Columbia moved to dismiss the ADA, Rehabilitation Act, and FMLA claims for failure to state a claim and further moved for partial summary judgment on the ADA claim and the common law claims.  For the foregoing reasons, this Court will grant in part and deny in part the District of Columbia's motion to dismiss and for partial summary judgment.[1]

---

[1] The relevant docket entries for purposes of this Memorandum Opinion are: (1) Plaintiff's amended complaint and documents from her initial lawsuit filed in Superior Court of the District of Columbia, ECF No. 1 and its attachments; (2) the District of Columbia's motion to dismiss and for partial summary judgment, ECF No. 7; (3) Plaintiff's motion in opposition to the District of Columbia's motion to dismiss and for partial summary judgment, ECF No. 10; (4) the District of Columbia's reply to Plaintiff's motion in opposition, ECF No. 11; (5) Plaintiff's sur-reply to the District of Columbia's reply, ECF No. 12; and (6) the District of Columbia's response to Plaintiff's sur-reply, ECF No. 15.  The page numbers cited herein are those assigned by the Court's CM/ECF system.

## I.   BACKGROUND[2]

On January 8, 2025, Plaintiff, who was employed as a physical education teacher at the DCPS school Browne Educational Campus ("Browne"), slipped on ice outside the DCPS building where she worked and briefly lost consciousness. ECF No. 12-3 at 6, 25. Upon recovering, she reported the incident to Browne's Principal Shawna Dix and was taken to the hospital in an ambulance. *Id.* at 6. On January 13, 2025, Plaintiff contacted DCPS administrators, including Dix, to inform them she had been diagnosed with a severe concussion and was unable to return to work until cleared by her physician. *See id.* at 16–17. She also "requested medical leave related to her condition," ECF No. 10 at 1, and at the request of DCPS personnel, provided "medical documentation," ECF No. 12 at 1. Plaintiff alleges that on that same day, Dix asserted at a staff meeting that Plaintiff was not injured and was instead attending women's health appointments. *See* ECF No. 1-1 at 92; ECF No. 12 at 1. Plaintiff later applied for FMLA leave on February 7, 2025. *See* ECF No. 10 at 1. Her requests for federal FMLA leave, leave under the District of Columbia's FMLA, and extended leave under DCPS' leave policy were denied on April 29, 2025. *See* ECF No. 12-3 at 9. At some point before the end of the school year, Plaintiff "was given a

---

[2] At this stage in the proceedings, the Court accepts as true all of the plaintiff's well-pleaded factual allegations, *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009), construes those allegations "in the light most favorable to the plaintiff[]," *Vick v. Brennan*, 172 F. Supp. 3d 285, 295 (D.D.C. 2016), and draws all "reasonable inferences" in favor of the plaintiff, *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016). More, in this Circuit, a court generally must "consider a *pro se* litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss." *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (quoting *Richardson v. United States,* 193 F.3d 545, 548 (D.C. Cir. 1999)); *see also, e.g.*, *Buchanan v. Sony Music Ent.*, No. 18-cv-3028, 2020 WL 2735592, at *1 (D.D.C. May 26, 2020) ("Because 'all factual allegations by a pro se litigant, whether contained in the complaint or other filings in the matter, should be read together in considering whether a motion to dismiss should be granted[,]' the facts recited herein are drawn from Buchanan's complaint and also the six briefs that he has submitted in opposition to Defendants' motions to dismiss." (citations omitted) (quoting *Muhammad v. FDIC*, 751 F. Supp. 2d 114, 119 (D.D.C. 2010)), *aff'd*, 836 F. App'x 16 (D.C. Cir. 2021)). Accordingly, the facts related herein are drawn from Plaintiff's submissions in Superior Court, including her Amended Complaint; her opposition to Defendant's motion to dismiss; and her sur-reply, including its attachments.

negative evaluation on her formal IMPACT teaching observation."[3]  ECF No. 1-1 at 93.  On May 9, 2025, Plaintiff was informed that her position at Browne was "being excessed" but that she could attempt to find another DCPS placement.  ECF No. 12-3 at 25.  It appears that she was unable to do so at least in part because of her negative teaching evaluation and was therefore "separat[ed] from the school system" in August 2025.  *Id.* at 26; *see also* ECF No. 1-1 at 93.

Meanwhile, on April 11, 2025, Plaintiff filed this action in D.C. Superior Court.[4]  *See* ECF No. 1-1 at 2–6.  She filed the now-operative Amended Complaint on December 23, 2025, which pleads five counts against the District of Columbia.  *Id.* at 92–97.  Count I alleges Plaintiff was discriminated against in violation of the ADA by Defendant's "failure to provide accommodations and unauthorized disclosure of medical information"; Count II alleges discrimination under the Rehabilitation Act on the same grounds.  *Id.* at 93.  In Count III, Plaintiff alleges Defendant retaliated against her for "requesting accommodations and reporting work injury" by threatening her with "AWOL status" and forcing her to return to work against medical advice, by giving her a negative teaching evaluation resulting in "loss of eligibility to teach for DCPS," and by "excessing" her position in violation of the FMLA, ADA, and "[d]isability [r]ights" in general.  *Id.* at 93.  Counts IV and V allege the common law torts of negligent supervision and intentional infliction of emotional distress, respectively.  *Id.* at 93–94.  As a remedy, Plaintiff seeks a declaratory judgment that Defendant violated her rights and "compensatory damages for emotional distress, lost benefits, and other harms."  *Id.* at 94.

---

[3] "IMPACT" is a teacher evaluation tool that DCPS began using in the 2009–2010 school year.  *See Wash. Teachers' Union v. DCPS*, 207 A.3d 1143, 1145 n.8 (D.C. 2019).

[4] The original Superior Court complaint predated much of the conduct related here.  It focused on Dix's alleged sharing of Plaintiff's private medical information and failure to provide reasonable accommodations.  *See* ECF No. 1-1 at 2.

On January 16, 2026, the Defendant removed this action to this Court and, one week later, filed a motion to dismiss and for partial summary judgment. *See* ECF No. 1; ECF No. 7. Defendant seeks summary judgment on Plaintiff's common law tort claims (Counts IV and V) for failure to provide notice under D.C. Code § 12-309, *see* ECF No. 7-1 at 4–6; and on the ADA claims in Count I (discrimination) and Count III (retaliation) for failure to exhaust administrative remedies, *see id.* at 6–7. It further argues that Plaintiff has failed to state a claim under the ADA because she does not plausibly allege a qualifying disability or that she requested a reasonable accommodation and because there is no "independent cause of action" under the statute for sharing confidential medical information without consent. *See id.* at 7-9; ECF No. 11 at 7. As to Plaintiff's Rehabilitation Act claim (Count II), Defendant contends that it, too, fails because she has not alleged a qualifying disability. *See* ECF No. 7-1 at 9–10. Finally, Defendant seeks dismissal of Plaintiff's FMLA claim given that her submissions do not allege that Defendant retaliated against her because she requested FMLA leave. *See* ECF No. 11 at 8–9. Plaintiff opposed the motion to dismiss in a response and a sur-reply,[5] both of which provide additional facts to support her claims. *See* ECF No. 10; ECF No. 12.

## II.    LEGAL STANDARD

### A.    Failure to State a Claim

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[5] Plaintiff filed her sur-reply without leave of court. However, the Court subsequently granted her leave to file the sur-reply in connection with Defendant's motion for leave to file a response to the sur-reply, which the Court also granted. *See* ECF Nos. 12–15. The parties are again cautioned that, as this case proceeds, any briefing beyond that contemplated by the Federal Rules of Civil Procedure or this Court's Local Civil Rules—generally an opening brief, opposition, and reply—will not be permitted absent leave of the Court. *See* ECF No. 14.

(citation modified); *see* Fed. R. Civ. P. 12(b)(6). As noted, the Court must accept as true the well-pleaded factual allegations, *Atherton*, 567 F.3d at 681; construe those allegations "in the light most favorable to the plaintiff[]," *Vick*, 172 F. Supp. 3d at 295; and draw all "reasonable inferences" in favor of the plaintiff, *Nurriddin*, 818 F.3d at 756. Although the plaintiff need not make "detailed factual allegations," the complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). At bottom, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

That said, *pro se* pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Court therefore "consider[s] a *pro se* litigant's complaint in light of all filings, including filings in response to a motion dismiss" and "attached exhibits." *Ho v. Garland*, 106 F.4th 47, 50 (D.C. Cir. 2024) (citation modified) (quoting *Brown*, 789 F.3d at 152). Still, like all litigants, a *pro se* plaintiff "must comply with the Federal Rules of Civil Procedure." *Coulibaly v. Pompeo*, 318 F. Supp. 3d 176, 183 (D.D.C. 2018). Thus, although "a *pro se* complaint must be construed liberally, *pro se* plaintiffs must still . . . state a claim for relief." *McGary v. Ravuindra*, No. 19-cv-3249, 2020 WL 4335613, at *3 (D.D.C. July 28, 2020).

## B.    Summary Judgment

Summary judgment is appropriate when the moving party demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689,

5

692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Initially, the moving party has the burden of demonstrating the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met this burden, the non-moving party must designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To establish that a fact is or is not genuinely disputed, a party must (a) cite specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). While the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-movant's favor, *Grosdidier v. Broad. Bd. of Governors*, 709 F.3d 19, 23–24 (D.C. Cir. 2013), the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position; instead, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252. Moreover, the non-moving party "'may not rest upon mere allegation or denials of his pleadings' but must present 'affirmative evidence' showing a genuine issue for trial." *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) (quoting *Anderson*, 477 U.S. at 256–57). Indeed, a moving party may succeed on summary judgment simply by pointing to the absence of evidence proffered by the non-moving party. *Anderson*, 477 U.S. at 249 ("If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." (internal citations omitted)).

It is well established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge at

summary judgment." *Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013) (quoting *Pardo-Kronemann v. Donovan*, 601 F.3d 599, 604 (D.C. Cir. 2010)).  A court's role in deciding a summary judgment motion is not to "determine the truth of the matter, but instead [to] decide only whether there is a genuine issue for trial." *Barnett*, 715 F.3d at 358.  Nonetheless, a plaintiff is still obligated to support his or her allegations by competent evidence, and a plaintiff may not avoid summary judgment through "conclusory allegations and speculation." *Nurriddin*, 40 F. Supp. 3d at 115.

### III.    DISCUSSION

As noted, Defendant challenges Plaintiff's claims on various bases and under two different rules of procedure—Rule 56, which governs motions for summary judgment, and Rule 12(b)(6), which governs motions to dismiss for failure to state a claim.  For the sake of clarity, the Court addresses each of Defendant's arguments in the order it presents them in its motion to dismiss and for partial summary judgment.

### A.    Motion for Partial Summary Judgment

#### 1.    Common Law Tort Claims

Defendant seeks dismissal of Plaintiff's claims for negligent supervision and intentional infliction of emotional distress because she failed to provide the notice required by D.C. Code § 12-309.  *See* ECF No. 7-1 at 4–6; ECF No. 15 at 3.  That statute provides in relevant part:

> [A]n action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage.

D.C. Code § 12-309(a).  Thus, where a plaintiff seeks unliquidated damages—that is, damages that "are not 'an easily ascertainable sum certain,'" *Chisholm v. District of Columbia*, 533 F. Supp.

2d 175, 179 (D.D.C. 2008) (quoting *Beeton v. District of Columbia*, 779 A.2d 918, 925 (D.C. 2001)), such as damages for pain and suffering and punitive damages in a tort action, *see Elzeneiny v. District of Columbia*, 699 F. Supp. 2d 31, 35 (D.D.C. 2010)—she must comply with D.C. Code § 12-309, *see, e.g.*, *Winston v. District of Columbia*, No. 23-cv-3832, 2025 WL 763763, at *8 (D.D.C. Mar. 11, 2025) (describing compliance with D.C. Code § 12-309 as a "mandatory prerequisite to filing tort claims" within its purview).[6] More, the statute "is to be strictly construed because it is a departure from the common law concept of sovereign immunity." *Id.* (quoting *Jones v. District of Columbia*, No. 21-cv-836, 2021 WL 5206207, at *13 (D.D.C. Nov. 9, 2021)). Indeed, "[u]nless it demonstrates compliance with the requirements of § 12-309, a plaintiff's suit against the District is properly dismissed because no right of action or entitlement to maintain an action accrues." *Jones*, 2021 WL 5206207, at *14 (quoting *District of Columbia v. Arnold & Porter*, 756 A.2d 427, 436 (D.C. 2000))).

Plaintiff has not demonstrated that she complied with the statute, especially in light of Defendant's evidence that she did not. "[T]he Mayor has ordered that her 'duty to receive notice under D.C. Official Code § 12-309 is delegated to the Office of Risk Management.'" *Turpin v. District of Columbia*, No. 22-cv-1807, 2022 WL 14807768, at *2 (D.D.C. Oct. 26, 2022) (quoting Mayor's Order 2004-10, 51 D.C. Reg. 1,455 (Feb. 6, 2004)). With its opening brief, Defendant offered an affidavit from Lana Craven, an employee in the division of the Office of Risk Management ("ORM") who receives notices of claims under D.C. Code § 12-309, that attests under penalty of perjury that she "conducted a diligent search" of the relevant records "for any written claim notices received from or on behalf of [Plaintiff] for any claims against the District" and found none. ECF No. 7-2 at 3. After the motion was filed, this Court instructed Plaintiff in

---

[6] Plaintiff's original D.C. Superior Court complaint sought punitive damages. *See* ECF No. 1-1 at 2. Her amended complaint does not. *See id.* at 94.

accordance with D.C. Circuit precedent that "the Court will accept as true any factual assertions contained in affidavits or attachments submitted by the defendant in support of a motion for summary judgment unless the plaintiff submits admissible affidavits or documentary evidence showing that the defendant's assertions are untrue." ECF No. 8 at 3. Plaintiff has not submitted an affidavit asserting that she provided written notice to ORM "of the approximate time, place, cause, and circumstances of the injury or damage." D.C. Code § 12-309. Her opposition includes an allegation that she "provided written notice to DCPS ORM and Principal Shawna Dix on January 22, 2025," ECF No. 10 at 1, but that is merely an allegation unsupported by evidence.[7] Her sur-reply attaches several emails to Dix and other DCPS personnel dated January 22, 2025, but none is addressed or copied to personnel at ORM. *See* ECF No. 12 at 11–14. She also makes another unsworn assertion in her sur-reply that she "provided written notice of the incident within six months to DCPS administration and the Office of Risk Management." *Id.* at 1. As such, Plaintiff has failed to submit "admissible affidavits or documentary evidence showing that the defendant's assertions are untrue." ECF No. 8 at 3. Where a defendant has presented "a declaration by a person with personal knowledge that the relevant files do not contain records of a grievance or complaint, vague assertions without supporting details" that the plaintiff provided notice "will not create genuine issue of fact." *Davis v. Mnuchin*, No. 08-cv-447, 2018 WL 8584035, at *19 (D.D.C. Nov. 13, 2018), *report and recommendation adopted sub nom. Davis v. Yellen*, 2021 WL 2566763 (D.D.C. June 22, 2021). Indeed, this case is like *Jones*, where the District of Columbia provided a similar affidavit (from the same affiant) in a pre-discovery motion for partial summary judgment and, in the absence of any admissible evidence from the plaintiff undermining the affidavit, the court dismissed the plaintiff's tort claim for failure to comply with

---

[7] Nor is there such a department as "DCPS ORM." Rather, the Office of Risk Management is "an agency within the District of Columbia Government," *Paul v. Didizian*, 292 F.R.D. 151, 151 n.1 (D.D.C. 2013), not a part of DCPS.

9

D.C. Code § 12-309. *See* 2021 WL 5206207, at \*13–14; Decl. of Lana Craven, *Jones v. District of Columbia*, 2021 WL 5206207 (D.D.C. Nov. 9, 2021), ECF No. 6-1; *see also Jackson v. District of Columbia*, No. 25-cv-302, 2026 WL 493943, at \*2 (D.D.C. Feb. 23, 2026) (relying on a similar affidavit by the same affiant to grant partial summary judgment prior to discovery for non-compliance with D.C. Code § 12-309).

However, the careful reader will have spotted a problem with Defendant's argument that the tort claims must be dismissed in full for failure to provide notice. Plaintiff does not seek only "unliquidated damages"; she also seeks a declaration "that Defendant's actions violated Plaintiff's rights under federal and local law." ECF No. 1-1 at 94. Declaratory relief is an equitable remedy. *See Mich. Welfare Rights Org. v. Trump*, 600 F. Supp. 3d 85, 107 n.8 (D.D.C. 2022). Notice under D.C. Code § 12-309 is not required for a plaintiff to claim equitable remedies. *Hunter v. District of Columbia*, No. 08-cv-256, 2008 WL 11627032, at \*2 (D.D.C. Nov. 4, 2008) (dismissing claims to the extent they sought unliquidated damages but allowing them to continue to the extent they sought "liquidated damages, injunctive, or equitable relief"). Thus, to the extent that they seek declaratory relief, Plaintiff's common law claims survive. Plaintiff also seeks "lost benefits." ECF No. 1-1 at 94. Courts have found that "back pay and benefits" are liquidated damages to which D.C. Code § 12-309 does not apply.[8] *Chisholm v. District of Columbia*, 533 F. Supp. 2d 175, 179 (D.D.C. 2008) (citation modified); *accord Elzeneiny*, 699 F. Supp. 2d at 34–35; *Hunter*,

---

[8] Plaintiff's original Superior Court complaint alleged over $8,000 in lost wages. *See* ECF No. 1-1 at 2. Additionally, among the materials Plaintiff submitted with her sur-reply is an email to DCPS in which she claims she suffered "a loss of wages." ECF No. 12-3 at 6. The Court must construe a *pro se* plaintiff's claims liberally and consider "all filings, including filings responsive to a motion to dismiss." *Brown*, 789 F.3d at 152. Thus, at this juncture, the Court interprets Plaintiff's claim of "lost benefits" to include lost wages.

2008 WL 11627032, at *2.  Thus, to the extent that they seek declaratory relief and back pay and benefits, Plaintiff's common law claims survive.[9]

Accordingly, the Court dismisses Plaintiff's claims for intentional infliction of emotional distress and negligent supervision against Defendant only to the extent that they seek unliquidated damages.

### 2.    ADA Claims

Defendant seeks summary judgment on Plaintiff's ADA claims arguing that she failed to exhaust her administrative remedies before filing suit.  The general rule is that "[b]efore filing a lawsuit under the ADA . . . , a plaintiff must exhaust her administrative remedies by filing a charge of discrimination with the EEOC." *Klotzbach-Piper v. Nat'l R.R. Passenger Corp.*, 373 F. Supp. 3d 174, 183 (D.D.C. 2019) (quoting *Cooper v. Henderson*, 174 F. Supp. 3d 193, 202 (D.D.C. 2016)).  "'Ordinarily receipt of a notice of right-to-sue letter is a condition precedent' to filing suit under the ADA." *Jones v. Quintana*, 975 F. Supp. 2d 63, 80 (D.D.C. 2013) (citation modified) (quoting *Dahlman v. Am. Ass'n of Retired Persons,* 791 F. Supp. 2d 68, 75 (D.D.C. 2011)), *aff'd*, 621 F. App'x 7 (D.C. Cir. 2015).  However, "[i]f a plaintiff files suit without a letter, but receives one before the complaint is dismissed, receipt of the letter 'effectively cures the deficiency in the original complaint.'" *Principe v. Vill. of Melrose Park*, No. 20-cv-1545, 2020 WL 4815908, at *3 (N.D. Ill. Aug. 18, 2020) (citation modified) (quoting *Perkins v. Silverstein*, 939 F.2d 463, 471

---

[9] The Court acknowledges that it is not entirely clear whether Plaintiff seeks "lost benefits" in connection with both, one, or none of the two common law claims—indeed, it appears that her intentional infliction of emotional distress claim is based entirely on the alleged breach of medical confidentiality, *see* ECF No. 1-1 at 94, which is unlikely to have caused Plaintiff's termination and thus loss of pay and benefits.  However, Defendant has made no such argument, and the Court will not construct one for it.  *See, e.g.*, *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020) ("[A]s a general rule, our system 'is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.'" (alteration in original) (quoting *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in the judgment))).

(7th Cir. 1991)); *see also, e.g.*, *Williams v. Wash. Metro. Area Transit Auth.*, 721 F.2d 1412, 1418 n.12 (D.C. Cir. 1983) ("Receipt of a right-to-sue notice during the pendency of the Title VII action cures the defect caused by the failure to receive a right-to-sue notice before filing a Title VII claim in federal court.");[10] *Hunter v. Wash. Metro. Area Transit Auth.*, No. 22-cv-3552, 2025 WL 522052, at *4 (D.D.C. Feb. 18, 2025) ("[I]t is well established that 'the defect of a prematurely filed [ADA] lawsuit may be excused when it is cured by the issuance of a right to sue letter while the action is pending.'" (quoting *Cruz–Packer v. District of Columbia*, 539 F. Supp. 2d 181, 190 (D.D.C. 2008))); *Mavrinac v. Emergency Med. Ass'n of Pittsburgh*, No. 04-cv-1880, 2005 WL 2304995, at *6 (W.D. Pa. Sep. 21, 2005) ("[A]lthough a right-to-sue letter is a condition precedent to filing Title VII and ADA suits, the failure to obtain one is a defect cured by issuance of the letter after the complaint has been filed." (citing *Gooding v. Warner-Lambert Co.,* 744 F.2d 354, 358 (3d Cir. 1984)).

Plaintiff filed her action in Superior Court on April 11, 2025. *See* ECF No. 1-1 at 2–6. With its motion to dismiss, Defendant submitted an affidavit from the Director of the DCPS office that "receives, processes, and investigates potential EEO claims against the District," who asserts that as of January 23, 2026, there was no record of an EEO claim by Plaintiff. ECF No. 7-3 at 2. With her sur-reply, Plaintiff submitted a printout regarding her EEOC claim that reflects an "initial inquiry" date of February 12, 2026. *See* ECF No. 12-2 at 2. In its response to that sur-reply, Defendant acknowledges that Plaintiff filed a formal charge of discrimination on February 26, 2026, and was issued a right-to-sue letter two days later. *See* ECF No. 15 at 3. Moreover, in its response to Plaintiff's sur-reply, Defendant, having acknowledged that Plaintiff was issued a right

---

[10] "Because the same statutory provision imposes the exhaustion requirement for both Title VII and the ADA, what is true of Title VII is true of the ADA." *Hudson v. Nat'l R.R. Passenger Corp.*, No. 25-cv-207, 2025 WL 3078197, at *2 (D.D.C. Nov. 4, 2025).

to sue letter, appears to abandon its argument that Plaintiff has failed to exhaust her ADA claims. *See* ECF No. 15 (arguing that (1) Plaintiff failed to provide notice of her common law claims under D.C. Code § 12-309, (2) Plaintiff's EEOC filing cannot be the basis for a retaliation claim, and (3) Plaintiff failed to allege she suffered from a qualifying disability); *see also, e.g.*, *Wal-Mart Stores, Inc. v. Sec'y of Labor*, 406 F.3d 731, 736 n.* (D.C. Cir. 2005) (noting that the moving party had, "by its silence in reply" had "abandoned [an] argument" raised in its opening brief).[11] Accordingly, Plaintiff has cured the deficiency of her original complaint and the Court will not grant summary judgment to Defendant on Plaintiff's ADA claims for failure to exhaust.[12]

---

[11] In a footnote in its response to Plaintiff's sur-reply, Defendant purports to "incorporate[] by reference all its arguments set forth in its motion to dismiss and for partial summary judgment, including its reply in support thereof." ECF No. 15 at 3 n.1. As this Court has cautioned on several occasions, "incorporation by reference is disfavored." *Robb v. Rollins*, No. 21-cv-2056, 2025 WL 1580849, at *5 n.8 (D.D.C. June 4, 2025), *report and recommendation adopted*, 2025 WL 2851638 (D.D.C. Oct. 8, 2025). Here, permitting incorporation by reference would be particularly troubling, as Plaintiff's sur-reply has rendered some of Defendant's original positions frivolous, for example, the argument that Plaintiff failed to exhaust her administrative remedies or failed to file a request for FMLA leave. *See* ECF No. 7-1 at 6–7, 12–13.

[12] If a federal employee sues a federal agency under the Rehabilitation Act, the exhaustion requirements of Title VII apply. *See, e.g.*, *Wright v. Ross*, No. 20-cv-306, 2020 WL 3083968, at *1 (D.D.C. June 10, 2020); *see also* 29 U.S.C. § 794a(a)(1) (incorporating the procedures of Title VII to cases brought against federal agencies). However, where, as here, the claims are not against a federal agency, but rather against a "recipient[] of federal funds," the exhaustion requirements of Title VII are not incorporated. *See Wright*, 2020 WL 3083968, at *1 n.3; 29 U.S.C. § 794a(a)(2) (incorporating the procedures of Title VI and one provision of Title VII that does not relate to exhaustion for claims brought against recipients of federal funds). Courts have therefore held that there is no exhaustion requirement for claims under the Rehabilitation Act against recipients of federal funds. *See, e.g.*, *Betts v. Wash. Metro. Area Transit Auth.*, No. 21-cv-1861, 2022 WL 3226281, at *15 & n.13 (D.D.C. Aug. 10, 2022) (asserting that "'it is generally understood that Section 504 claims brought by non-federal employees' are 'exempt from the administrative exhaustion requirements that govern claims brought by federal employees under the Rehabilitation Act'" and collecting cases (quoting *Pappas v. District of Columbia*, 513 F. Supp. 3d 64, 83 (D.D.C. 2021))). Appropriately, Defendant does not seek dismissal of the Rehabilitation Act claims for failure to exhaust.

13

**B.    Motion to Dismiss Under Rule 12(b)(6)**

In its motion to dismiss, Defendant also argues that Plaintiff has failed to state a claim under the ADA, the Rehabilitation Act, and the FMLA. *See* ECF No. 7-1 at 7–11. Again, the Court addresses those argument in the order Defendant presents them in its briefing.

1.    ADA

Defendant mounts two arguments for dismissal of Plaintiff's ADA claim. First, it maintains that there is no independent cause of action under the ADA for disclosing confidential medical information without consent. *See id.* at 7–8; *see also* ECF No. 11 at 5–6. Second, it asserts that Plaintiff has failed to allege that she suffered from a qualifying disability under the ADA. *See* ECF No. 7-1 at 8–9; *see also* ECF No. 15 at 4–5. The Court will address these arguments in turn.

a.    Medical Confidentiality

The ADA includes a confidentiality provision. As a court in the Eastern District of Pennsylvania explains:

> The ADA provides that a covered employer "shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such inquiry is shown to be job-related and consistent with business necessity." However, [under 42 U.S.C. § 12112(d)(4)(B),] a covered employer "may make inquiries into the ability of an employee to perform job-related functions." When an employer receives information pursuant to Section 12112(d)(4)(B), it must treat the information as a confidential medical record and can only disclose it to supervisors who need to know about job-related restrictions, first aid and safety personnel, and government investigators evaluating ADA compliance. As these provisions make clear, a plaintiff asserting a violation of the ADA's confidentiality provision must show that (A) "her employer obtained her medical information through an employment-related medical examination or inquiry," (B) "her employer disclosed that information," and (C) "that she suffered an injury as a result of the disclosure."

*Purvenas-Hayes v. Saltz, Mongeluzzi & Bedensky, P.C.*, 707 F. Supp. 3d 472, 475 (E.D. Pa. 2023) (citation modified) (first quoting 42 U.S.C. § 12112(d)(4)(A); then quoting *id.* § 12112(d)(4)(B);

and then quoting *Bardell v. Banyan Delaware, LLC*, No. 23-cv-148, 2023 WL 6810092, at \*5 (D. Del. Oct. 16, 2023))). "A plaintiff need not prove that he or she is a qualified individual with a disability in order to state a claim under Section 12112(d)." *Dillon v. Norfolk S. Ry. Co.*, 35 F. Supp. 3d 896, 902 (E.D. Mich. 2014); *see also, e.g.*, *In re Nat'l Hockey League Players' Concussion Injury Litig.*, 120 F. Supp. 3d 942, 950 (D. Minn. 2015) ("Persons need not be disabled in order to state a claim for the unauthorized gathering or disclosure of confidential medical information.").

In her sur-reply, Plaintiff alleges that she "provided medical documentation after being instructed by school administration to submit medical records to justify absences related to a work injury and medical condition." ECF No. 12 at 1. Having received such information, Dix allegedly "disclosed Plaintiff's private medical information to coworkers," including "male staff members[] who had no legitimate work-related need to know Plaintiff's confidential medical information," specifically "stating that Plaintiff was not injured and was instead attending OB-GYN appointments." *Id.* Those allegations meet the first two requirements of a cause of action under Section 12112(d). *See, e.g.*, *Purvenas-Hayes*, 707 F. Supp. 3d at 475 ("[A] plaintiff asserting a violation of the ADA's confidentiality provision must show that (A) 'her employer obtained her medical information through an employment-related medical examination or inquiry,' [and] (B) 'her employer disclosed that information[.]'" (quoting *Bardell*, 2023 WL 6810092, at \*5)). Additionally, plaintiff must also show that she suffered tangible injury, such as "through actual damage (emotional, pecuniary, or otherwise)." *Koch v. Walter*, 935 F. Supp. 2d 164, 176 (D.D.C. 2013) (quoting *Tice v. Centre Area Transp. Auth.*, 247 F.3d 506, 519 (3d Cir. 2001)). An exhibit Plaintiff attaches suggests that the information was disclosed using demeaning language that caused Plaintiff discomfort when she learned of it. *See* ECF No. 12-3 at 21–22. Courts have

recognized that "shame" and "embarrassment" satisfy the injury requirement under the ADA's confidentiality provision." *See Koch*, 935 F. Supp. 2d at 176 (quoting *EEOC v. Ford Motor Credit Co.*, 531 F. Supp. 2d 930, 941 (M.D. Tenn. 2008)). The Court finds that, at this juncture, those allegations plausibly state a claim under Section 12112(d).[13]

b.     Qualifying Disability

The ADA "prohibits discrimination by an employer 'against a qualified individual with a disability because of' that disability." *Flemmings v. Howard Univ.*, 198 F.3d 857, 860 (D.C. Cir. 1999) (quoting 42 U.S.C. § 12112(a)). To survive a motion to dismiss arguing that a plaintiff has failed to allege a disability, she "must plead facts that, if true, establish (1) that she had a physical or mental impairment (2) that substantially limited (3) a major life activity." *Border v. Nat'l Real Est. Advisors, LLC*, 453 F. Supp. 3d 249, 256 (D.D.C. 2020). Courts in this Circuit do not require "specific allegations about the limitation of a major life activity caused by a plaintiff's impairment" to satisfy the pleading requirement. *Id.* (quoting *Boykin v. Gray*, 895 F. Supp. 2d 199, 216 (D.D.C. 2012). Nevertheless, "plaintiff must still plead facts sufficient to show that she had a disability to survive a motion to dismiss." *Id.*

Defendant recognizes that "[t]he exhibits attached to [Plaintiff's] sur-reply indicate that she slipped on a sidewalk on her way to school and suffered a concussion" but asserts that those exhibits "do not indicate that the effects of this injury were permanent or of long duration, nor that the injury substantially impaired any of her major life activities." ECF No. 15 at 5. Some statutory history will be helpful here. The Third Circuit recently explained:

> In 2008, Congress enacted the [ADA Amendments Act of 2008 ("ADAAA")] as a response to "Supreme Court cases, similar lower court decisions, and the Equal

---

[13] The Rehabilitation Act incorporates the confidentiality provisions of the ADA. *See Doe v. U.S. Postal Serv.*, 317 F.3d 339, 340 (D.C. Cir. 2003) (citing 29 U.S.C. §§ 791(g), 794(d)). Defendant did not move to dismiss Plaintiff's medical confidentiality claim under the Rehabilitation Act, which would in any case have survived for the reasons just discussed.

16

Employment Opportunity Commission's ('EEOC') regulations" which had narrowly interpreted key provisions of the ADA. Prior to enactment of the ADAAA, in *Toyota Motor Mfg., Ky., Inc. v. Williams*, the Supreme Court had held that an impairment must "prevent or severely restrict the individual from doing activities that are of central importance to most people's daily lives" and be "permanent or long term" to qualify as a disability. Congress rejected the Supreme Court's permanency standard. In enacting the ADAAA, Congress mandated that the "definition of disability shall be construed in favor of broad coverage of individuals" and "to the maximum extent permitted." In response, the EEOC explained that even an impairment that is expected to last less than six months can constitute an actual disability "if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."

*Morgan v. Allison Crane & Rigging LLC*, 114 F.4th 214, 221 (3d Cir. 2024) (citation modified) (footnotes omitted) (first quoting *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002); then quoting 42 U.S.C. § 12102(4)(A); and the quoting 29 C.F.R. § 1630.2(j)(1)(ii)); *see also id.* at 222 (noting that an "emerging body of case law across the federal judiciary" and "current EEOC regulations" agree "that a temporary impairment can constitute an actual disability for ADA purposes"). Indeed, as the Ninth Circuit recognized in *Shields v. Credit One Bank, N.A.*, 32 F.4th 1218 (9th Cir. 2022), Congress established through the ADAAA that impairments lasting fewer than six months can constitute a disability under the statute. There, the court explained that the statute "contains three alternative definitions of 'disability,'" *id.* at 1224: (1) an impairment that "substantially limits one or more major life activities," 42 U.S.C. § 12102(1)(A); (2) a "record of such an impairment," *id.* § 12102(1)(B); and (3) "being regarded as having such an impairment," *id.* § 12101(1)(C). The ADAAA "amended only the third of those three alternatives"—the "'regarded as' alternative"—excluding "impairments that are transitory and minor," that is, impairments having "an actual or expected duration of 6 months or less." *Shields*, 32 F.4th at 1224 (emphasis omitted) (quoting 42 U.S.C. § 12102(3)(B)). "The fact that Congress added such a 'transitory and minor' limitation *only* to the 'regarded as' alternative . . . and *not* in the other two

17

alternative definitions of 'disability' strongly confirms that no such temporal limitation applies to those other two alternatives." *Id.* at 1224–25. Regulatory guidance "further confirms" that, "although the 'duration of an impairment' remains 'one factor that is relevant in determining whether the impairment substantially limits a major life activity,' there is no categorical rule excluding short-term impairments, which 'may be covered if sufficiently severe.'" *Id.* at 1225 (quoting 29 C.F.R., Pt. 1630, App'x). Thus, following the enactment of the ADAAA, Plaintiff does not have to allege that "the effects of [her] injury were permanent or of long duration" to state a claim. ECF No. 15 at 5.

Plaintiff must, however, allege that the concussion "substantially limits [her] ability . . . to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). In her opposition to Defendant's motion, she alleges that her "medical condition"—which the undersigned understands to be her concussion—"substantially limits" her abilities to work, concentrate, stand, and walk. ECF No. 10 at 1. Those activities are included in the definition of "[m]ajor life activities" in the implementing regulations, and Defendant does not argue otherwise. 29 C.F.R. § 1630.2(*i*)(1)(i); *see, e.g.*, *Catchings v. Hazel Park Sch. Dist.*, No. 23-cv-11313, 2025 WL 2640419, at *4 (E.D. Mich. Sep. 12, 2025) (noting that a "substantial head injury" would affect several major life activities); *Keith v. Tex. Tech Med. Ctr.*, No. 24-cv-10, 2024 WL 5112762, at *5 (N.D. Tex. Nov. 22, 2024) (assuming, in light of the fact that "'[w]hether a plaintiff is disabled under the ADA is not a demanding question' and requires only that the Court ask if the plaintiff has a physical impairment that 'substantially limits' at least one major life activity such as walking, lifting, or bending," that "the after-effects of [the plaintiff's] possible concussion and broken facial bones qualify as a disability under the ADA/RA." (quoting *Epley v. Gonzalez*, 860 F. App'x at 310, 312–13 (5th Cir. 2021)), *report and recommendation adopted*,

18

2024 WL 5113192 (N.D. Tex. Dec. 13, 2024)). Instead, it suggests that the fact that she "was communicating routinely with [DCPS] officials . . . and texting with friends" undermines "her allegation that she suffered from a qualifying disability." ECF No. 15 at 5. But "[a]n impairment that substantially limits one major life activity need not substantially limit other major life activities in order to be considered a substantially limiting impairment." 29 C.F.R. § 1630.2(j)(1)(viii). And, in any event, Defendant's argument really seeks to dispute Plaintiff's factual allegations, which exceeds the scope of review at the motion to dismiss stage. *See, e.g.*, *Atherton*, 567 F.3d at 681 ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (alteration in original) (quoting *Erickson,* 551 U.S. at 94)).

Aggregating Plaintiff's allegations regarding her disability, she pleads that she suffered from a severe concussion that substantially limits major life activities, including working, concentrating, standing, and walking. Although not exhaustive by any means, the level of detail is like that in *Border*. There, the court found allegations that the plaintiff "had a high-risk pregnancy" and a fetus with intrauterine growth restrictions that resulted in birth by Caesarian section, which "limited one or more major life activities," including the ability to travel, walk, lift, stand, use her abdominal muscles, and exercise, stated an "ADA claim [that was] plausible on its face." *Border*, 453 F. Supp. 3d at 256. That is, the court found allegations that identified the alleged disability and the plausibly related major life activities it affected were sufficient to survive a motion to dismiss. That is what Plaintiff has done here. To be sure, Plaintiff's allegations are thin, but so are Defendant's arguments, and they do not carry its burden to show that she has failed to plead a plausible cause of action.[14] *See Cohen v. Bd. of Trs. of the Univ. of the Dist. of Columbia,*

---

[14] In its response to Plaintiff's sur-reply, which identifies the impairment Plaintiff claims as a severe concussion, Defendant's argument on this issue cites only two cases, both of which predated the ADAAA. *See* ECF No. 15 at 5

819 F.3d 476, 481 (D.C. Cir. 2016) ("All federal courts are in agreement that the burden is on the moving party to prove that no legally cognizable claim for relief exist." (quoting 5B Wright & Miller's Federal Practice and Procedure § 1357 (3d ed.))); *see also Richardson*, 193 F.3d at 548 (holding that "[c]ourts must construe pro se filings liberally").

2.    Rehabilitation Act

Defendant argues that Plaintiff's Rehabilitation Act claim should be dismissed for two reasons: (1) she has not alleged a disability under the statute and (2) she has failed to allege that she sought a reasonable accommodation.  ECF No. 7-1 at 9–10; ECF No. 11 at 7.  As Defendant notes, "the definition of a 'disabled' individual under the Rehabilitation Act is exactly the same as that under the ADA."  ECF No. 7-1 at 9; *see* 29 U.S.C. § 705(20)(B) (incorporating the ADA definition of disability into the Rehabilitation Act).  Consequently, the discussion in Section III.B.1.b, *supra*, which finds that Plaintiff has adequately pleaded that she has a disability under the ADA, also applies to the Rehabilitation Act.

As to the second point, "[a]n underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation which the defendant-employer has denied."  *Flemmings*, 198 F.3d at 861.  Interpreting the Plaintiff's submissions liberally, as the Court is required to do, *see Richardson*, 193 F.3d at 548, she pleads that, following her injury, she requested medical leave, which was denied.  *See* ECF No. 1-1 at 93 ("Plaintiff was . . . forced to return to work, full duty, against the medical advisement of [her] treating physician."); ECF No. 12 at 2 (Plaintiff's sur-reply asserting that she requested medical leave);

(citing *Thompson v. Rice*, 422 F. Supp. 2d 158, 166 (D.D.C. 2006), and *Croley v. Republican Nat'l Comm.*, 759 A.2d 682, 700-01 (D.C. 2000)).  Indeed, *Thompson* relied heavily on the Supreme Court's now abrogated decision in *Toyota Motor Manufacturing*.  *See Thompson*, 422 F. Supp. 2d at 169–70 (relying on *Toyota Motor Manufacturing* in determining that the plaintiff has not established a substantial limitation of major life activities).  More, neither of those opinions addressed a motion to dismiss for failure to state a claim.  *See id.* at 163 (addressing the defendant's motion for summary judgment); *Croley*, 759 A.2d at 685–86 (addressing post-trial motions).  They are therefore of limited use at this early stage in the litigation.

ECF No. 12-3 at 9 (email from DCPS denying her requests for "coverage under the Federal Family and Medical Leave Act . . . , District of Columbia Family and Medical Leave Act . . . , and Extended Leave Policy of DC Public Schools").

The question then becomes whether a request for medical leave (under the FMLA or otherwise) can constitute a request for a reasonable accommodation under the Rehabilitation Act.[15] The Court first notes that regulatory guidance indicates that leave can be a reasonable accommodation. *See* 29 C.F.R., Pt. 1630, App'x (noting that "accommodations could include permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment"). However, as the court observed in *Tillman v. Washington Metropolitan Area Transit Authority*, "the caselaw on this issue is mixed." No. 24-cv-1176, 2026 WL 836283, at *3 (D.D.C. Mar. 26, 2026). In that case, Judge Friedrich addressed a claim that a bus operator was terminated from his position in retaliation for requesting a reasonable accommodation—FMLA leave due to a mental health condition. *Id.* at *1. The defendant argued "in a single footnote" that the plaintiff's "request for leave is not actionable under the Rehabilitation Act because it was not a request under the ADA." *Id.* at *3. The court acknowledged that "[t]he D.C. Circuit has rejected a plaintiff's 'argument that her requests for FMLA leave should have been construed as requests for an ADA accommodation,'" but observed that other judges in this Circuit and elsewhere "have noted that 'there may be circumstances where an employee's FMLA application could put an employer on notice that the employee was also requesting an accommodation under the ADA.'" *Id.* at *3 n.1

---

[15] Although Plaintiff also alleges a failure to accommodate under the ADA, Defendant does not seek dismissal of that claim on this basis. *See* ECF No. 11 at 6–8 (arguing only that Plaintiff's Rehabilitation Act claim should be dismissed for failure to plead that she sought a reasonable accommodation). However, the analysis would be the same under the ADA. *See, e.g.*, *Webster v. U.S. Dep't of Energy*, 267 F. Supp. 3d 246, 259 (D.D.C. 2017) ("The ADA, which is incorporated into the Rehabilitation Act, defines discrimination to include 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.'" (quoting 42 U.S.C. § 12112(b)(5)(A))).

(first quoting *Waggel v. George Wash. Univ.*, 957 F.3d 1364, 1373 (D.C. Cir. 2020); and then quoting *Murphy v. District of Columbia*, No. 18-1478, 2022 WL 2643554 at *3 (D.D.C. July 8, 2022)); *see also, e.g.*, *Tuck v. District of Columbia*, No. 24-cv-2609, 2025 WL 2159182, at *6 (D.D.C. July 30, 2025) (stating, "A request for leave may constitute a reasonable accommodation request" and collecting cases); *Laguna v. Chester Hous. Auth.*, 616 F. Supp. 3d 462, 469 (E.D. Pa. 2022) ("Under some circumstances, a leave of absence for medical treatment may constitute a reasonable accommodation under the ADA. Plaintiff has therefore stated a failure to accommodate claim." (citation omitted) (citing *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 151 (3d Cir. 2004) ("The federal courts that have permitted a leave of absence as a reasonable accommodation under the ADA have reasoned that applying such a reasonable accommodation at the present time would enable the employee to perform his essential job functions in the near future." (citation modified))); *Clemens v. Speer*, No. 16-cv-467, 2017 WL 2684101, at *3 (W.D. Wis. June 21, 2017) (noting that under the ADA and Rehabilitation Act, a "reasonable accommodation" may include "a medical leave of absence."); *Hill v. Walker*, 918 F. Supp. 2d 819, 829–30 (E.D. Ark.) ("A number of courts have 'concluded that a leave of absence may be a reasonable accommodation where it is finite and will be reasonably likely to enable the employee to return to work.'" (quoting *Graves v. Finch Pruyn & Co.,* 457 F.3d 181, 186 n. 6 (2d Cir. 2006)), *aff'd*, 737 F.3d 1209 (8th Cir. 2013)). In light of the "scant briefing on this open statutory question," Judge Fredrich allowed the claim to proceed. *Tillmon*, 2026 WL 836283, at *3.

The Court will follow that approach here. Plaintiff alleges that she requested medical leave. Defendant has not, however, wrestled with the regulatory guidance or the caselaw regarding whether such a request can be considered a request for a reasonable accommodation because, for example, such leave "would enable the employee to perform his essential job functions in the near

22

future." *Conoshenti*, 364 F.3d at 151; *see also Hill*, 918 F. Supp. 2d at 829–30 ("A number of courts have 'concluded that a leave of absence may be a reasonable accommodation where it is finite and will be reasonably likely to enable the employee to return to work.'" (quoting *Graves,* 457 F.3d at 186)). In the absence of robust briefing from Defendant to support an argument that Plaintiff's request for medical leave cannot be a reasonable accommodation, the Court finds that it "cannot at this early stage say that [Defendant] has carried its burden" to show that Plaintiff has failed to state a claim based on denial of a reasonable accommodation.[16] *Tillmon*, 2026 WL 836283, at *3 (citation modified).

3.      FMLA

"An employer may not retaliate against an employee for requesting FMLA leave." *Johnson v. DeJoy*, No. 23-cv-2342, 2024 WL 4215557, at *7 (D.D.C. Sep. 17, 2024). In its opening brief, Defendant sought dismissal of this claim because the Amended Complaint failed to allege that Plaintiff requested FMLA leave. *See* ECF No. 7-1 at 10. Fair enough, although construing the Amended Complaint "liberally," as the Court must, *Richardson*, 193 F.3d at 548, and drawing all "reasonable inferences" in Plaintiff's favor, *Nurriddin*, 818 F.3d at 756, a court *might* find Plaintiff's assertion that she engaged in protected activity and had a cause of action for retaliation under the FMLA, *see* ECF No. 1-1 at 93, would suffice to allege she had requested such leave. In any event (as noted above), Plaintiff's sur-reply includes an email from the "DCPS Leave of

---

[16] The Court reads Plaintiff's submissions to contend that her request for a reasonable accommodation is the protected activity on which her retaliation claims rest. *See* ECF No. 1-1 at 93 (asserting that Plaintiff was "retaliated against . . . for engaging in protected activity, including requesting accommodations and reporting work injury"); *Ajisafe v. Gov't of the D.C.*, No. 25-cv-81, 2026 WL 710212, at *9 (D.D.C. Mar. 13, 2026) ("[T]he act of requesting in good faith a reasonable accommodation is a protected activity." (quoting *Solomon v. Vilsack*, 763 F.3d 1, 15 (D.C. Cir. 2014))). It is worth noting, however, that Defendant is correct that Plaintiff's contact with the EEOC in February 2026 cannot form the basis of a retaliation claim because it post-dates any of the alleged reprisals. *See* ECF No. 15 at 3–4; *see also Barnes v. Hegseth*, No. 23-cv-932, 2025 WL 915564, at *4 (D.D.C. Mar. 26, 2025) ("[T]he fact that the alleged retaliatory actions preceded the protected activity precludes a determination that the protected activity caused the defendant to retaliate against the plaintiff." (quoting *Lewis v. Columbia*, 653 F. Supp. 2d 64, 79 (D.D.C. 2009))).

Absence Team" rejecting her request for leave "under the Federal Family and Medical Leave Act," ECF No. 12-3 at 9, and that is certainly sufficient.

Defendant changes tack in its reply brief and contends that Plaintiff "nowhere alleges that her requests for FMLA leave were the reason she was subjected to any adverse employment action." ECF No. 11 at 9. But in her retaliation count, she asserts she was "retaliated against . . . for engaging in protected activity, including requesting accommodations." ECF No. 1-1 at 93. She alleges the retaliation took the form of, among other things, a negative performance evaluation and the elimination of her position. *See id.* Her sur-reply states that she requested medical leave and "subsequently experienced adverse treatment," which "support[s]" her FMLA claim. ECF No. 12 at 2. Again, construing her filings "liberally," *Richardson*, 193 F.3d at 548, that is sufficient to allege that her request for FMLA leave caused the reprisals, *see, e.g.*, *Ortega v. Mayorkas*, No. 23-cv-2417, 2024 WL 4119390, at *12 (D.D.C. Sep. 24, 2024) (collecting cases finding that allegations the plaintiff was subjected to specific adverse employment action "because [s]he engaged in protected activity" sufficient to survive a motion to dismiss arguing insufficient allegations of causation).

## IV.    CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss and for Partial Summary Judgment, ECF No. 7. Specifically, Defendant's motion is granted on Plaintiff's claims for intentional infliction of emotions distress and negligent supervision to the extent they seek unliquidated damages; the motion is denied in all other respects. Accordingly, the following claims survive: Count I for failure to accommodate and disclosure of confidential medical information under the ADA; Count II for failure to accommodate and disclosure of confidential medical information under the Rehabilitation Act;

24

Count III for retaliation under the ADA and the FMLA; and Count IV for negligent supervision and Count V for intentional infliction of emotional distress to the extent they seek a declaratory judgment and "lost benefits."

**SO ORDERED.**

Date:   May 11, 2026

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE